**GLEN CONSTRUCTION COMPANY, INC., Complainant,**

v.

**BANK OF VIENNA et al., Defendants.**

Civ. A. No. 75–662–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

April 2, 1976.

L. J. Miller, Arlington, Va., for complainant.

Douglas Bywater, Vienna, Va., for Bank of Vienna.

George P. Williams, Alexandria, Va., for U. S. Internal Revenue Service.

Frank D. Swart, Fairfax, Va., for Chantilly Crushed Stone and W. B. Clark.

John N. Beall, Jr., McLean, Va., for Fairfax Equipment Rental Corp.

Herbert L. Karp, Alexandria, Va., for Scott Kurt Construction Co.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

This matter is before the Court on the motion of the plaintiff, Glen Construction Company, Inc., for summary judgment in its favor on its Complaint for Interpleader filed against the United States of America, Bank of Vienna, Scott Kurt Construction Company, Fairfax Equipment Rental Equipment Corporation, and W. B. Clark, and on the motion of the United States for summary judgment in its favor against all the defendants including Chantilly Crushed Stone, Inc. Glen Construction Company, Inc. does not seek summary judgment against Chantilly Crushed Stone, Inc. The action arose on a Complaint for Interpleader brought by the plaintiff, a general contractor, to resolve conflicting claims of its sub-contractor, Scott Kurt, and Scott Kurt's assignee, Bank of Vienna, several sub-sub-contractors and the United States. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1335, and 2410, the amount in controversy exceeding Ten Thousand Dollars ($10,000) (exclusive of interest and costs).

## FINDINGS OF FACT

On February 12, 1975, Glen Construction Company, Inc. [hereinafter referred to as Glen], a general contractor, and Scott Kurt Construction Company [hereinafter referred to as Scott Kurt] entered into a sub-contract in which Scott Kurt agreed to furnish labor and materials for a Glen project titled Sherwood Hall Medical Building in Alexandria, Virginia. Scott Kurt, in turn, entered into various sub-sub-contracts with Fairfax Equipment Rental Corporation [hereinafter referred to as Fairfax], W. B. Clark [hereinafter referred to as Clark], and Chantilly Crushed Stone, Inc. [hereinafter referred to as Chantilly] to furnish certain materials and/or services on the Sherwood Hall construction project.

In July and August, 1975, the United States levied on all sums due and owing to Scott Kurt from Glen for taxes due, owed and unpaid to the United States from Scott Kurt. On August 4, 1975, Scott Kurt allegedly assigned its receivables to the Bank of Vienna. On September 9, 1975, Glen filed an Interpleader on the Sherwood Hall project, paying the alleged contract balance into the registry of the Court. Prior to the filing of the Complaint, the defendant sub-sub-con-

tractors had either made demand upon Glen for payment or had outstanding vouchers for work performed at the request of Scott Kurt.

The total amount of the funds paid by Glen into the registry of the Court is Twenty-One Thousand Nine Hundred Two and 78/100 Dollars ($21,902.78). The claims of the defendant sub-sub-contractors and the dates of the work performed or materials furnished as established by the admissions of the parties in the pleadings are set forth below:

| Claimant | Dates Service/Material Furnished | Amount of Claim |
|---|---|---|
| Chantilly Crushed Stone, Inc. | 7–03–75 to 8–05–75 | $9,653.23 |
| W. B. Clark | 7–22–75 to 7–31–75 | 1,037.00 |
| Fairfax Equipment Rental Corporation | 7–24–75 to 8–28–75 | 2,030.00 |

The claim of the United States is based on the following schedule of tax liens. Notice of the tax liens was filed with the Clerk of the State Corporation Commission of the Commonwealth of Virginia in Richmond on the dates indicated.[1]

| Date of Tax Assessment | Date Notice Filed | Amount |
|---|---|---|
| April 14, 1975 | June 9, 1975 | $37,209.59 |
| June 9, 1975 | June 17, 1975 | 6,523.00 |
| June 16, 1975 | June 20, 1975 | 10,913.57 |
| August 5, 1975 | August 7, 1975 | 15,264.26 |

The Court also has for decision what claim, if any, the Bank of Vienna has to the fund held in the registry of the Court.

## ISSUE

The single issue suitable for determination upon the motions of the United States and Glen for summary judgment is whether the tax liens asserted by the Government have priority over the claims of the defendant contractors and the bank to the interpleaded funds.

## CONCLUSIONS OF LAW

The United States asks that its tax liens acquired pursuant to 26 U.S.C. § 6321 be enforced against the interpleaded funds. Section 6321 of the Internal Revenue Code provides in pertinent part:

> "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

The lien imposed by Section 6321 "shall continue until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. However, the tax lien is not valid against any judgment lien creditor or mechanic's lienor of the taxpayer "until notice thereof which meets the requirement of subsection (f) has been filed by the Secretary or his delegate" 26 U.S.C. § 6323(a). Subsection (f) of Section 6323 contains the following provision:

> "(A) Under State laws.—
>
> \* \* \* \* \* \*
>
> "(ii) Personal Property.—In the case of . personal property, whether tangible or intangible, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State,

---

1. The following tax liens were also recorded with the State Corporation Commission according to exhibits attached to the Motion for Summary Judgment of the United States. However, the tax liens listed below were not previously made a part of this litigation nor were they enumerated in the "Affidavit of Indebtedness" signed by James P. Boyle, District Director of Internal Revenue, Richmond District, which accompanied the Government's Motion for Summary Judgment. These additional tax liens, therefore, have not been considered as a part of the present litigation.

| Date of Tax Assessment | Date Notice Filed | Amount |
|---|---|---|
| June 30, 1975 | July 2, 1975 | $1,735.03 |
| September 22, 1975 | September 26, 1975 | 705.95 |
| October 29, 1975 | November 10, 1975 | 9,583.28 |
| November 4, 1975 | November 12, 1975 | 392.28 |

in which the property subject to the lien is situated;"

To comply with the provisions of 26 U.S.C. § 6323(f), the Government filed notice of its tax liens against Scott Kurt with the State Corporation Commission of the Commonwealth of Virginia in Richmond, Virginia, as provided for in Va.Code Ann. § 55–142.1(b) (1950 as amended):

"(b) Notices of liens upon personal property, whether tangible or intangible, for taxes payable to the United States and certificates and notices affecting the liens shall be filed as follows:

"(1) If the person against whose interest the tax lien applies is a corporation or a partnership whose principal executive office is in this State, as these entities are defined in the internal revenue laws of the United States, in the office of the clerk of the State Corporation Commission."

It is the opinion of the Court, based upon the applicable law and the certified copies of the notices of tax lien submitted by the Government, that the United States has properly asserted its tax liens against Scott Kurt.

The Government argues that in contrast to its own position, the other claimants to the interpleaded funds are not mechanic's lienors; nor do they possess perfected liens under Virginia statutes. Acceptance of the Government's argument would require the Court to ignore the effect of two Orders entered in this case on September 12, 1975, and October 10, 1975, respectively. The September Order enjoined the defendants "from instituting or maintaining any proceeding in any Court of any state of the United States or any U. S. District Court, including the perfecting, recording, or maintaining of any lien on plaintiff's construction projects or property, real, personal or mixed, to enforce any debt arising from the claims now before the Court." The October Order added Clark and Fairfax as defendants, sustained the interpleader and continued the injunction embodied in the September Order as to all defendants, new and old, but modified its terms so as to exclude the United States Revenue Service from the operation of the injunction.

█ The September and October Orders precluded all the defendants from perfecting mechanic liens and the October Order was entered before the expiration of the time limit under Virginia statute for perfection of mechanic's liens. Va.Code Ann. § 43–4 (1950, as amended). Consequently, the defendant contractors were precluded by the operation of the injunction from asserting their claims in the normal fashion. Simple fairness would dictate that the entry of an injunction pursuant to 28 U.S.C. § 2361 barring filing of liens to which sub-sub-contractors are entitled for the purpose of maintaining the status quo pending a decision on the validity of the interpleader should not be a bar to a determination of the merits of the sub-sub-contractors' claims. The Court, therefore, concludes that the defendants by being required to participate in this action are entitled to avail themselves of the rights provided by Virginia statute to protect their claims for materials and services. The next step is an examination of whether the defendants, or any of them, would have been able to perfect mechanic's liens under Virginia law as of the date of the entry of the Court's injunctions of September 12, 1975, and October 10, 1975.

█ Perfection of a lien for work done and materials furnished under Virginia law occurs when a sub-contractor or one performing labor or furnishing materials for a sub-contractor complies with the provisions of Va.Code Ann. §§ 43–4, 43–7 and 43–9 (1950, as amended). Section 43–4 requires that a contractor file his memorandum "at any time after the work is done and the material furnished by him and before the expiration of sixty days from the time such building, structure, or railroad is completed, or the work thereon otherwise terminated . . . ." The admissions of the parties

in the pleadings establish that the project was completed on September 5, 1975, and, therefore, all contractors, sub-contractors and sub-sub-contractors would have had sixty (60) days from that day in which to perfect their liens. Both injunction orders of the Court were entered within that sixty-day period. Accordingly, for the purpose of establishing priority of the liens asserted by the sub-sub-contractors, the date of perfection of their respective mechanic liens will be September 12, 1975, or October 10, 1975, depending upon when they became defendants.

■ The sub-sub-contractor claimants to the interpleaded fund allege that Scott Kurt has no interest in the fund to which a United States tax lien can attach. It is clear that state law governs the initial question of whether the taxpayer (Scott Kurt) had "property" or "rights to property" to which the tax lien could attach. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). Section 43–13 of the Code of Virginia states that a contractor who receives payment for his work but retains the funds with intent to defraud instead of satisfying his contractual obligation to his sub-contractors shall be guilty of a misdemeanor. The defendants, Fairfax, Chantilly, and W. B. Clark, argue that Section 43–13 impresses a trust on any payments due Scott Kurt in favor of all sub-contractors of Scott Kurt. *See United States v. Durham Lumber Co.,* 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960). In *Perrin & Martin, Inc. v. United States,* 233 F.Supp. 1016 (E.D.Va.1964), the Court held that Section 43–13 did not create a trust on behalf of the sub-contractors. The District Court cited the refusal of the Supreme Court of Virginia to find a legal trust within the provisions of Section 43–13 and the emphasis of the Virginia Court on the "intent to defraud" element rather than the "existence of the indebtedness" as the determinative factor of guilt under the statute. *See Overstreet v. Commonwealth,* 193 Va. 104, 67 S.E.2d 875 (1951). This Court holds, therefore, that Virginia law does not provide that funds retained by a contractor from payments made by the owner and owing to the sub-contractors are held in trust for the benefit of the sub-contractors. From this, the Court further holds that the theory that Scott Kurt has no property interest in the interpleaded funds is refuted. Therefore, Scott Kurt did have an interest in the fund due from Glen to which the Government could attach its lien.

■ The priority of the Federal tax lien as against a mechanic's lien is a question of Federal law. *United States v. Pioneer American Insurance Co.,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1962).

> "The priority of the federal tax lien provided by 26 U.S.C. § 6321 as against liens created under state law is governed by the common-law rule— 'the first in time is the first in right.' *United States v. New Britain,* 347 U.S. 81, 85–86, 74 S.Ct. 367, 370, 98 L.Ed. 520." *Id.* at 87, 83 S.Ct. at 1650, 10 L.Ed.2d at 774.

To establish the priority of a state-created lien over a Federal tax lien, the claimant must show that his lien has been perfected so as to be deemed choate under Federal law. *United States v. Pioneer American Insurance Co., supra* at 88–89, 83 S.Ct. at 1654–1656, 10 L.Ed.2d at 774–775. Utilizing September 12, 1975, and October 10, 1975, as the dates on which the mechanic's liens of Chantilly, Fairfax and W. B. Clark were perfected under state law and became choate under Federal law, the tax liens filed by the United States prior to September 12, 1975, and October 10, 1975, have priority over the claims of the mechanic lienors and are in excess of the fund paid into the registry of this Court. Consequently, the claims of Chantilly, Fairfax and Clark against the fund are denied.

■ The Bank of Vienna, in its Answer to the Complaint, stated that it secured from Scott Kurt an assignment of the contract balance due Scott Kurt

from Glen on August 4, 1975. Such assignment affords no priority. *Perrin & Martin v. U. S., supra.* As set forth earlier in this Opinion, the Government had properly filed three tax liens before August 4, 1975, the total of which amounted to more than the fund held in the registry of this Court. The principle "the first in time is first in right" previously referred to clearly establishes the priority of the Government over the claim of the Bank of Vienna. The Court, therefore, denies the Bank of Vienna a recovery from the fund.

For the foregoing reasons, the Motion for Summary Judgment of the Government is GRANTED and judgment is entered in favor of the Government in the amount of $21,902.78 against the fund in the registry of the Court and the Clerk is directed to pay to the United States said amount. The counterclaim of Chantilly against Glen and the Government's Cross-Claim against Scott Kurt requesting judgment for all further taxes owed are not mooted by the ruling thus far made. As a result granting of summary judgment in favor of the Government cannot resolve all matters before the Court. Accordingly, the case will be continued on the docket and counsel for Glen, Scott Kurt and the Government are directed to contact Mrs. Casey in the Clerk's Office to secure a date for hearing on the remaining issues during the week beginning June 1, 1976.

The Motion of Glen for Summary Judgment is DENIED.