# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CHURCH OF THE GARDENS, a
Washington Not-for-Profit Corporation
operating as a faith-based religious
organization, ALVIN WHITE, and
KIMBERLY ROJO,

Appellants,

v.

CLEAR RECON CORP., a California
Corporation,

Respondent.

No. 86886-1-I

DIVISION ONE

UNPUBLISHED OPINION

FELDMAN, J. — Alvin B. White, Kimberly Rojo, and Church of the Gardens
(collectively "Plaintiffs") appeal the trial court's rulings and final judgment permitting
the sale of encumbered property. Plaintiffs claim the trial court proceedings were
procedurally improper, both the trial court proceedings and this appeal are tainted
by judicial bias, and the trial court abused its discretion in failing to consider
pertinent evidence. Because these arguments lack merit, we affirm.

I

On September 18, 2006, to secure repayment of a promissory note signed
on September 14, 2006, White (one of the plaintiffs herein) executed a deed of
trust encumbering the property at issue in this appeal, which is located at 7712

Silver Lake Road in Maple Valley, Washington. Deutsche Bank National Trust Company is the current beneficiary and Clear Recon Corporation is the current trustee of the deed of trust. White allegedly defaulted on the loan and received a notice of default and notice of trustee's sale, in 2022.

Plaintiffs thereafter filed this lawsuit against Clear Recon on March 13, 2023. In the complaint, Plaintiffs claim Clear Recon should be enjoined from proceeding with any sale of the subject property because (a) "the purported beneficiary" does not possess "the wet ink note actually signed by the borrowers" and therefore cannot lawfully "enforce that note by way of foreclosing" and (b) the property owners have not defaulted on "an obligation owed to the purported trustee." Plaintiffs thereafter filed a motion for a temporary restraining order (TRO), a motion for summary judgment, and a motion for a preliminary injunction—also seeking to prevent the threatened sale of the property.

The trial court subsequently issued a TRO prohibiting Clear Recon from proceeding with the sale, noting that "Plaintiff's motion for summary judgment permanently enjoining . . . Clear Recon Corp. from selling White's real property is set for oral argument on May 19, 2023 before this Court." Following entry of this order, Deutsche Bank sought and was granted by the trial court permission to intervene in the case. Then, following the summary judgment hearing, the court denied Plaintiffs' summary judgment motion but extended the TRO pending an evidentiary hearing to determine "whether [Clear Recon] holds the actual original promissory note and is entitled to proceed to foreclose non-judicially on the subject property, or whether the original promissory note held by [Clear Recon] has been

forged as alleged by Plaintiff White." The court added, "The only issue in dispute for the evidentiary hearing, and in this case, is the validity of the original note held by [Clear Recon]. Plaintiffs have not created a question of fact on any other issue in this case."

Prior to the evidentiary hearing, Deutsche Bank and Plaintiffs filed competing motions in limine and for judicial notice. Deutsche Bank, for its part, filed motions in limine to exclude the testimony of Plaintiffs' expert witnesses, to preclude Plaintiffs from calling as a witness Deutsche Bank's counsel of record, and to exclude certain articles, publications, and other documents produced by Plaintiffs in discovery responses. Plaintiffs, in turn, filed a motion asking the trial court to take judicial notice of various articles, publications, and pleadings from other cases. The trial court granted Deutsche Bank's motions and denied Plaintiffs' motion.

After the evidentiary hearing, the trial court found "by clear, cogent and convincing evidence that the original note was received by Select Portfolio Servicing [(SPS), the current mortgage servicer of the deed of trust] in 2021 and placed in [its] vault where it remained until it was delivered to Midori Sagara, attorney for Deutsche Bank." It also found "by clear, cogent and convincing evidence," based on the testimony of forensic document examiner Hannah McFarland, that the note she reviewed in 2024, which was in the custody of Ms. Sagara at the time, contained the original wet-ink signature of Plaintiff White."

Based on the above findings, the trial court ordered "that the temporary injunction ordered on September 1, 2023 is hereby lifted and the Trustee's Sale of

the subject property may proceed." Lastly, on May 22, 2024, the court entered judgment in favor of Deutsche Bank and Clear Recon. This timely appeal followed.

II

A.     Permanent Injunction

Plaintiffs argue the trial court erred by failing to permanently enjoin the sale of White's property pursuant to RCW 61.24.130. We disagree.

Before addressing the merits of the trial court's judgment, Plaintiffs begin by attacking the procedure; they claim the evidentiary hearing was an "ad hoc procedure" and thus procedurally flawed. They are mistaken. RCW 61.24.130 provides a means for any person with an interest in the property "to restrain, on any proper legal or equitable ground, a trustee's sale." RCW 61.24.130(1). Describing that statutory framework, the court explained in *Plein v. Lackey*, 149 Wn.2d 214, 67 P.3d 1061 (2003), as follows:

> "[t]he injunction action [under RCW 61.24.130] consists of two stages: the temporary injunction and the permanent injunction. The grant of the temporary injunction merely prevents the trustee's sale from taking place until a full hearing on the merits of the permanent injunction can be obtained. The grant or denial of the permanent injunction, on the other hand, constitutes the final resolution of the action

*Id.* at 226-27 (citing Joseph L. Hoffmann, Comment, *Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Washington*, 59 WASH. L. REV. 323, 327 (1984)). The trial court correctly implemented this statutory scheme by issuing

a TRO pending an evidentiary hearing to determine whether to permanently enjoin the subject sale. That is precisely what Washington law anticipates.

Nor did the trial court err in lifting the TRO following the evidentiary hearing. After considering testimony, exhibits, and arguments of both parties, the trial court entered findings that the original note, containing the original wet-ink signature of White, was received by SPS and placed in its vault. Plaintiffs have not assigned error to any of the trial court's findings, and thus they are "verities on appeal." *See In re Marriage of Bresnahan*, 21 Wn. App. 2d 385, 407, 505 P.3d 1218 (2022). The unchallenged findings resolve Plaintiffs' allegations regarding the validity of the original note held by Clear Recon. As the trial court correctly noted, "Plaintiffs have not created a question of fact on any other issue in this case." Thus, the trial court did not err in concluding there are no proper grounds to permanently enjoin the sale.

Despite this, Plaintiffs argue the evidentiary hearing—and, indeed, the entirety of the proceedings below—shows judicial bias. Plaintiffs similarly challenge "the bias of this Court's own judicial officers." Plaintiffs allege the trial court clerk intentionally refused to file certain documents as part of the record on appeal, the trial court was "in on 'the take,'" and all Washington judicial officers are economically incentivized to allow the enforcement of mortgage-backed securities. Regarding the record on appeal, Plaintiffs failed to designate the three documents they claim the trial court clerk refused to include. *See* Supplemental Designation of Clerks Papers at 5-6 (filed 12/20/24). As to the other arguments regarding judicial bias in a nonjudicial foreclosure action, *Larson v. Snohomish County*, 20

Wn. App. 2d 243, 499 P.3d 957 (2021), is instructive. There, the appellants argued the trial judges should have recused themselves from the case because the judges had a financial interest in the outcome of the nonjudicial foreclosure. *Id.* at 287. While the factual background is different, as Plaintiffs here never requested the trial court recuse itself, the argument is the same: that judges are biased because their state retirement funds are invested in mortgage-backed securities. As we concluded in *Larson*, "[n]o reasonable person could conclude that [the court and its staff] acted in any way other than impartially in handling these cases." *Id.* at 288-89. The same reasoning and result apply equally here as well.

B.    Intervention

Plaintiffs next argue the trial court erred in granting Deutsche Bank's motion to intervene. They claim Deutsche Bank "lacked standing to intervene because [it] failed to file a complaint . . . setting forth those judicial inquiries it was presenting." We disagree.

The trial court based its ruling granting Deutsche Bank's motion to intervene on CR 24(a), which we quote below. While the statement of facts in Plaintiffs' opening brief mentions CR 24(c), which governs the "procedure" for intervention, neither their assignments of error nor the argument section of their brief references CR 24. "[T]his court does not review issues not argued, briefed, or supported with citation to authority." *Christian v. Tohmeh*, 191 Wn. App. 709, 727-28, 366 P.3d 16 (2015). We therefore decline to address whether the trial court's ruling violated the procedural provisions in CR 24(c).

But even if we ignore this deficiency in Plaintiffs' briefing, the result is the same. So long as the parties have sufficient notice of the intervenor's claims, "'the proper approach is to disregard non-prejudicial technical defects.'" *State v. San Juan County*, 102 Wn.2d 311, 317-18, 686 P.2d 1073 (1984) (quoting *Spring Constr. Co. v. Harris*, 614 F.2d 374, 376-77 (4th Cir. 1980)). In its motion to intervene and its opposition to Plaintiffs' motion for summary judgment, Deutsche Bank included facts and arguments regarding its position on Plaintiffs' claims and allegations regarding the promissory note. On this record, Plaintiffs had sufficient notice of Deutsche Bank's arguments and position to render any technical noncompliance with CR 24(c) non-prejudicial.

Nor is the trial court's ruling otherwise erroneous. Intervention in an action is allowed as of right under CR 24(a), which provides in relevant part as follows:

> Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the person is so situated that the disposition of the action may as a practical matter impair or impede the person's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

CR 24(a). "We will reverse an intervention of right only if the trial court committed an error of law." *Ferencak v. Dep't of Labor & Indus.*, 142 Wn. App. 713, 720, 175 P.3d 1109 (2008) (citing *Westerman v. Cary*, 125 Wn.2d 277, 302, 892 P.2d 1067 (1994)).

Deutsche Bank's motion to intervene was timely filed on May 16, 2023, soon after the trial court granted a TRO enjoining Clear Recon from proceeding with the trustee's sale. Additionally, as beneficiary of the deed of trust, Deutsche Bank had

an economic interest in the action that was not adequately protected by the trustee, Clear Recon. *See Lyons v. U.S. Bank Nat. Ass'n*., 181 Wn.2d 775, 787, 336 P.3d 1142 (2014) (quoting *Bain v. Metro. Mortg. Group, Inc.,* 175 Wn.2d 83, 93, 285 P.3d 34 (2012)) ("Trustees have obligations to all of the parties to the deed, including the homeowner."). Contrary to Plaintiffs' argument, the trial court did not err in granting Deutsche Bank's motion to intervene.

C.      Motions in limine and for judicial notice

Plaintiffs argue the trial court erred in granting Deutsche Bank's motions in limine and denying their request for judicial notice. We again disagree.

First, Plaintiffs argue the trial court erred in excluding Dr. James Kelley's testimony at the evidentiary hearing. At the hearing, Plaintiffs offered Kelley as an expert in engineering to dispute the authenticity of the promissory note. The trial court ultimately excluded Kelley's testimony because he lacked sufficient expertise to testify as an expert witness regarding the validity of the document. We review a trial court's decision on the admissibility of expert testimony under ER 702 for abuse of discretion. *L.M. v. Hamilton*, 193 Wn.2d 113, 135, 134, 436 P.3d 803 (2019).

In support of its ruling, the trial court cited and relied on *21st Mortg. Corp. v. Nicholls*, 25 Wn. App. 2d 795, 525 P.3d 962 (2023) (published in part). In *Nicholls*, two codefendants in a judicial foreclosure action claimed that the plaintiff "did not have standing to bring a foreclosure action because it had obtained the note underlying the foreclosure fraudulently." *Id.* at 799. To establish that assertion, the codefendants offered a report and affidavit by Kelley asserting "the

note and allonges were copies." *Id.* at 800. The trial court excluded the testimony

because Kelley's "training and his experience do not rise to the level of the Court

finding him to be an expert in this area." *Id.* at 801.

On appeal, we affirmed. In an unpublished portion of our opinion, we

explained:

> The trial court's conclusion is supported by the following evidence, all of which Kelley provided himself:
>
> • None of Kelley's formal education and decades-long work experience was in forensic document examination; instead, he was educated in mathematics and worked in an extraordinarily wide range of fields from computer engineering and nuclear and advance weapons design to technical management, when he happened to be asked to examine a document in 2013 for a private detective because "they knew [Kelley] was a computer guy";
>
> • Since then, Kelley has not taken any formal forensic document examination courses or training, including courses to distinguish between different forms of ink, courses in writing instruments, or courses in handwriting analysis;
>
> • Likewise, Kelley did not receive supervised training under a forensic document examiner or complete any apprenticeship in the area of forensic document examination;
>
> • In short, Kelley described himself as "an electrical and computer engineer"; and
>
> • Finally, Kelley had never been retained by a lender or mortgage servicer (with the possible exception of one credit union) to provide document examination. Indeed, Kelley acknowledged that "generally" he does not review loan documentation, which is at issue here.

*Nicholls*, No. 83347-2-I, slip op. (unpublished portion) at 24-25,

https://www.courts.wa.gov/opinions/pdf/833472.pdf.[1] Based on this record

---

[1] While this portion of *Nicholls* is unpublished, we may properly cite and discuss unpublished opinions where, as here, doing so is "necessary for a reasoned decision." GR 14.1(c).

evidence, we concluded "the trial court did not err in excluding Kelley based on his qualifications." Slip op. (unpublished portion) at 26. Citing *Nicolls*, a federal district court similarly concluded "Kelley is not qualified to provide expert testimony on forensic document examination because he lacks the requisite 'knowledge, skill, experience, training, or education' in the field." *Church of the Gardens v. Quality Loan Servs. Corp.*, 3:23-cv-06193-TMC, 2025 WL 2524463, at *6 (W.D. Wash. Sept. 2, 2025) (quoting Fed. R. Evid. 702).[2]

The same reasoning applies here, as the trial court correctly concluded. Plaintiffs offered Kelley's testimony for the same reason the co-defendants identified in *Nicholls*: to demonstrate the promissory note was not authentic. And despite this court's exhaustive explanation as to why Kelley was not qualified to testify as an expert witness regarding issues relating to the authenticity of a promissory note, Plaintiffs here did not establish any change in Kelley's expertise, training, and experience regarding forensic document examination since *Nicholls*. On this record, the trial court did not abuse its discretion (nor did it err) in excluding his testimony.

Second, Plaintiffs argue the trial court "violated ER 103(a)(2) and prevented preservation of critical issues regarding default and securitization-related fraud" by refusing to consider an offer of proof for the testimony of William Paatalo and Maher Soliman regarding their forensic examination of financial records. An offer

---

[2] Citation to *Church of the Gardens* is permitted pursuant to GR 14.1(b) and Fed. R. App. P. 32.1 (permitting citation to federal decisions issued on or after January 1, 2007). *See State v. LG Elecs., Inc.,* 186 Wn.2d 169, 196 n.8, 375 P.3d 1035 (2016). The opinion is especially pertinent as it involved overlapping parties (Church of the Gardens and White) in addition to similar testimony by the same purported expert (Kelley) and the same issue (whether Kelley may qualify as an expert by knowledge, skill, experience, training, or education).

of proof under ER 103(a)(2) must "communicate to the trial court the substance of the evidence in question so as to make clear to the trial court what is being offered in proof, and why the offer should be admitted over the opponent's objections, so the court may make an informed ruling." *Adcox v. Children's Orthopedic Hosp. and Med. Ctr.*, 123 Wn.2d 15, 26-27, 864 P.2d 921 (1993) (citing *State v. Ray*, 116 Wn.2d 531, 539, 806 P.2d 1220 (1991)). The offer may be provided by questions and answers of the witness or by summaries provided by counsel. *See Thor v. McDearmid*, 63 Wn. App. 193, 204, 817 P.2d 1380 (1991). But if the substance of the excluded evidence is apparent from the record, an offer of proof is not required. *Ray*, 116 Wn.2d at 539.

Here, after the trial court excluded these witnesses' testimony but before Plaintiffs' counsel made an offer of proof as to their testimony, the trial court ascertained that Paatalo's written report summarized his testimony and had previously been admitted as an exhibit with regard to the motions in limine. Similarly, the substance of Soliman's proposed testimony also was communicated to the court in the motions in limine. The trial court therefore concluded an offer of proof was unnecessary. The trial court correctly so ruled based on the foregoing legal principles and the comprehensive summaries of each witness's testimony. Nor can Plaintiffs establish prejudice given that they have not assigned error to the trial court's ruling excluding these witnesses' testimony.

Third, Plaintiffs argue the trial court erred in excluding Sagara's testimony at the evidentiary hearing. Plaintiffs claim the exclusion of Sagara denied them due process and an opportunity to scrutinize Sagara's assertions about the

promissory note.  As the trial court noted, Sagara represented Deutsch Bank in these proceedings.  Thus, as the trial court correctly concluded, "any assertions that Ms. Sagara has made in any motions in this case before the court" are not evidence.  Plaintiffs have cited no relevant cases establishing the admissibility of such statements.  Where, as here, "no authorities are cited in support of a proposition, we are not required to search out authorities, but may assume that counsel, after diligent search, has found none." *Helmbreck v. McPhee*, 15 Wn. App. 2d 41, 57, 476 P.3d 589 (2020).  Thus, we conclude the trial court did not abuse its discretion (nor did it err) in excluding Sagara's testimony.

Finally, Plaintiffs argue the trial court erred in refusing to take judicial notice under ER 201 of a voluminous array of documents including articles, publications, and pleadings from other cases.  Under ER 201, when a court takes judicial notice of a fact, it "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  ER 201(b).  The documents at issue here, in contrast, contained arguments and allegations, not accurate and undisputed facts.  The trial court did not abuse its discretion (nor did it err) in refusing to take judicial notice of those documents.

D.    Additional Evidence on Appeal

Lastly, Plaintiffs ask that we consider several additional documents that they claim undermine Deutsche Bank's statement in its brief of respondent that the

"Trust then re-created the original note to proceed with a non-judicial foreclosure."

This issue is governed by RAP 9.11(a), which states:

> The appellate court may direct that additional evidence on the merits of the case be taken before the decision of a case on review if: (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

While Plaintiffs cite RAP 9.11(a), as well as ER 201, in requesting that we consider the additional evidence, they provide no supporting argument or analysis regarding the requirements for doing so. Accordingly, we deny this request. *See Christian*, 191 Wn. App. at 727-28 (quoted above).

Affirmed.

Feldman, J.

WE CONCUR:

Díaz, J.